UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FLINTLOCK CONSTRUCTION SERVICES, LLC,

                        Plaintiff,

          -against-

TRAVELERS INDEMNITY COMPANY and TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,

                     Defendants.

Case No. 1:24-cv-05114 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

In this dispute, Plaintiff Flintlock Construction Services, LLC ("Flintlock"), seeks a judgment declaring that it is an additional insured under policies that Defendants Travelers Indemnity Company ("TIC") and Travelers Indemnity Company of Connecticut ("TICC" and, together with TIC, "Travelers") issued to Flintlock's subcontractor, H.A.E. Air, Inc. ("H.A.E."). Travelers move for summary judgment on the grounds that Flintlock is not an additional insured. For the reasons that follow, the Court DENIES the motion.

## BACKGROUND

### I. Relevant Facts

The facts here are largely undisputed. Flintlock was the construction manager on a project for a property in Manhattan owned by 233 West 125th Street Danforth LLC ("Danforth"). *See* Dkt. 25 ("Second Amended Complaint" or "SAC") ¶ 7; *see also* Dkt. 46 ("Pl. RSUF") ¶ 20. On February 5, 2018, Flintlock and H.A.E. entered into an agreement (the "Subcontract") in which H.A.E. would perform certain work on that project as Flintlock's subcontractor. SAC ¶ 8; *see also* Pl. RSUF ¶ 19. Attached to the Subcontract are various documents, including Exhibit A (a "Listing of Additional Insureds for Insurance Coverage," Dkt. 38-3), Exhibit H (a "Schedule

of Values," Dkt. 38-10), and Exhibit K ("Insurance Requirements," Dkt. 38-13).  Pl. RSUF ¶ 21.

Article 13 of the Subcontract requires that H.A.E. buy insurance "in accordance with **Exhibit

K**," which in turn provides that any such policy "must include endorsements for the following as

Additional Insureds: Owner, Landlord, Lender, and all entities listed on **Exhibit H**, as may be

updated from time to time, and their respective partners, directors, officers, employees, agents

and representatives."  *Id.* ¶¶ 22-23 (first quoting Dkt. 38-1 at 18; and then quoting Dkt. 38-13 at

2).  As noted, however, Exhibit H does not contain a list of entities: it is a schedule of values.

*See generally* Dkt. 38-10.  The list of additional insureds is found in Exhibit A.  Pl. RSUF ¶¶ 24-

25.  And although Exhibit A contains a list of multiple entities under the heading "Additional

Insureds," Flintlock's name is included under the separate heading "Certificate Holder."  *Id.*

¶ 25.  The parties agree that "Exhibit A to the Subcontract is not mentioned anywhere in Exhibit

K to the Subcontract."  *Id.* ¶ 26.

A third party, Cotgreave Insurance Agency, Inc. ("Cotgreave") issued two certificates of

liability to Flintlock on June 9, 2021, and July 13, 2021.  *Id.* ¶¶ 28, 31.  Both certificates identify

Flintlock as the "Certificate Holder," and both include language stating that they "confer[] no

rights upon the certificate holder"; "do[] not affirmatively or negatively amend, extend or alter

the coverage afforded by the policies below"; and "do[] not constitute a contract between the

issuing insurer(s), authorized representative or producer, and the certificate holder."  *Id.* ¶¶ 29-

30, 32-33 (capitalization omitted).  Moreover, both certificates state that "[i]f the certificate

holder is an additional insured, the policy(ies) must have additional insured provisions or be

endorsed."  *Id.* ¶¶ 30, 33 (capitalization omitted).

In accordance with the Subcontract's terms, H.A.E. obtained two commercial insurance

policies (the "Primary Policies") from TICC.  Pl. RSUF ¶ 1.  One policy was effective from July

23, 2020, to July 23, 2021, and the other was effective from July 23, 2021, to July 23, 2022.  *Id.*

The Primary Policies identify H.A.E. and another entity, NAA Properties LLC, as the named insureds. *Id.* ¶ 3. Flintlock is not explicitly named in the Primary Policies as an insured, an additional insured, or in any other capacity. *Id.* ¶ 12. However, the Primary Policies contain a blanket provision, through which "[a]ny person or organization that [H.A.E.] agree[s] in a written contract or agreement to include as an additional insured on this Coverage Part" is deemed an additional insured. *Id.* ¶ 7 (quoting Dkt. 37-3 at 13 and Dkt. 37-5 at 123).

Separately, TIC issued two excess insurance policies to H.A.E. (the "Excess Policies"). *Id.* ¶ 13. Like the Primary Policies, the Excess Policies identify H.A.E. and NAA Properties LLC as the named insureds, *id.* ¶ 15, and omit Flintlock's name entirely, *id.* ¶ 18. However, coverage under the Excess Policies "is subject to the same terms, conditions, agreements, exclusions and definitions" as the Primary Policies. *Id.* ¶¶ 16-17. The Excess Policies also provide that TIC "will pay on behalf of the insured those sums, in excess of the 'applicable underlying limit', that the insured becomes legally obligated to pay as damages to which Coverage A of this insurance applies." *Id.* ¶ 16 (quoting Dkt. 37-6 at 9 and Dkt. 37-7 at 9).

Between February 5, 2021, and February 3, 2023, Flintlock sent correspondence to both H.A.E. and TICC alleging that Flintlock had observed water leaks and damage at the property beginning on February 3, 2021, and that H.A.E. was responsible for both. *Id.* ¶ 34; *see also* Dkt. 38-18 at 1 (February 5, 2021 letter from Flintlock to H.A.E. alleging damages witnessed February 3, 2021). On January 10, 2024, TICC sent Flintlock a denial of coverage for those claims. Pl. RSUF ¶ 35. In the letter, TICC explained that "it ha[d] not been determined that any of the claimed leaks at the loss locale were caused by . . . [H.A.E.], or that any of the claimed faulty work was actually performed by H.A.E. Further, there is a question of there actually being 'property damage' sustained as a result of these claimed leaks." Dkt. 37-8. The following year, on March 27, 2025, Danforth sued both H.A.E. and Flintlock in New York state court in

connection with these damages. *Id.* ¶ 37. Danforth seeks nearly $6 million in damages from Flintlock in that action, *see* Dkt. 38-19 at 24, which is still pending, *see generally 233 West 125th Street Danforth LLC vs. Flintlock Construction Services, LLC*, No. 651692/2025 (N.Y. Sup. Ct.).

## II.     Procedural History

Flintlock originally filed this action in New York state court on May 28, 2024, seeking a judgment declaring that it is an insured under the Primary Policies. *See* Dkt. 1-1. On July 5, 2024, Travelers removed the matter to this Court. *See* Dkt. 1. On July 22, 2024, Flintlock filed its First Amended Complaint, *see* Dkt. 9, which Travelers moved to dismiss on August 27, 2024, *see* Dkts. 16-18. Travelers withdrew that motion on stipulation that Flintlock would again amend its complaint, Dkt. 22, and Flintlock filed the SAC on October 10, 2024, Dkt. 25. Travelers moved for summary judgment on the SAC on April 23, 2025. Dkt. 36. *See also* Dkt. 37 ("Barata Decl."); Dkt. 38 ("Szczepanski Decl."); Dkt. 39 ("Def. SUF"); Dkt. 40 ("Br."). That motion is fully briefed. *See* Dkt. 45 ("Opp."); Dkt. 46 ("Pl. RSUF"); Dkt. 47 ("Def. RSUF"); Dkt. 48 ("Reply").

## DISCUSSION

## I.     Applicable Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the moving party's burden to demonstrate the absence of any genuine factual dispute, and the Court "constru[es] the evidence in the light most favorable to the [nonmoving party] . . .[,] drawing all reasonable inferences and resolving all ambiguities in [its] favor." *Jaffir v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (second and final alteration in original) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017)). On issues of contract interpretation,

4

summary judgment is proper only "if the language of the contract is wholly unambiguous." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 257 (2d Cir. 2002) (quoting *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994)).  A contract is ambiguous where its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement."  *Peterson v. Islamic Repub. of Iran*, 876 F.3d 63, 83 (2d Cir. 2017) (alteration adopted), *vacated on other grounds sub nom. Bank Markazi v. Peterson*, 589 U.S. 1127 (2020).

## II.    Analysis

The parties agree that Flintlock is not expressly named as an insured or additional insured in the Primary Policies or Excess Policies.  Therefore, the parties also agree, Flintlock can be covered only if it is an additional insured under the Policies' blanket provision; that is, only if H.A.E. agreed, in the Subcontract, to make Flintlock an additional insured.  *See* Br. at 8-9; Opp. at 6.  Travelers argue, however, that the Subcontract does not demonstrate such an agreement — first, because the Subcontract states that H.A.E. will obtain insurance policies naming as additional insureds only those entities listed on Exhibit H and, second, because even if that part of the Subcontract had instead pointed to Exhibit A, that document lists Flintlock as a certificate holder, not as an additional insured.  Br. at 9-11.  The Court finds that both aspects of the Subcontract present fact issues that preclude summary judgment.

### A.    The Meaning of Exhibit K

On the first point, Flintlock argues that the Subcontract suffers from a scrivener's error: Exhibit K to the Subcontract (a document titled "Insurance Requirements," Dkt. 38-13) states that H.A.E. must include as additional insureds on its policies all the entities listed in Exhibit H (which is a schedule of values for the project, and does not contain the name of any entity, Dkt. 38-10) when it clearly means to refer to Exhibit A (which does contain a list of entities and is

5

entitled "Listing of Additional Insureds of Insurance Coverage," Dkt. 38-3).  *See* Opp. at 7-10.

The Court finds that this citation creates, at the very least, an ambiguity in the Subcontract,

which precludes summary judgment in Travelers' favor.

"When evaluating whether a contract is ambiguous, 'it is black-letter law that courts must

reject interpretations of agreement provisions that are commercially unreasonably or illogical.'"

*Shipping & Fin., Ltd. v. Aneri Jewels LLC*, No. 19-cv-01293 (NRB), 2019 WL 5306979, at *2

(S.D.N.Y. Oct. 21, 2019) (alteration adopted) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill*

*Holdings, LLC*, 127 F. Supp. 3d 156, 174 (S.D.N.Y. 2015)).  Moreover, "'[a] contract should be

construed in light of its objective, and should not be read in a fashion that defeats its

purpose,' . . . 'render[s] it an absurdity' . . . [or would create] unfair and anomalous results." *Lee*

*v. Marvel Enters., Inc.*, 386 F. Supp. 2d 235, 244 (S.D.N.Y. 2005) (first quoting *Allen v.*

*WestPoint-Pepperell, Inc.*, No. 90-cv-03841 (SAS), 1996 WL 2004, at *6 (S.D.N.Y. Jan. 3,

1996); and then quoting *Saffire Corp. v. Newkidco., LLC.*, 286 F. Supp. 2d 302, 308 (S.D.N.Y.

2003)).  "'Where some absurdity has been identified or the contract would otherwise be

unenforceable either in whole or in part,' courts 'may as a matter of interpretation carry out the

intention of the contract by transposing, rejecting, or supplying words to make the meaning of

the contract more clear.'" *Davitashvili v. Grubhub Inc.*, No. 20-cv-03000 (LAK), 2023 WL

2537777, at *10 (S.D.N.Y. Mar. 16, 2023) (alterations adopted) (quoting *Jade Realty LLC v.*

*Citigroup Com. Mortg. Tr. 2005-EMG*, 980 N.E.2d 945, 947 (N.Y. 2012)), *aff'd in part and*

*rev'd on other grounds*, 131 F.4th 109 (2d Cir. 2025).

Here, in reviewing the Subcontract on Travelers' summary judgment motion, the Court is

guided by the reasoning of two pertinent cases: *StandardAero Aviation Holdings, Inc. v.*

*Signature Aviation Ltd.*, No. 22-cv-07515 (AT), 2024 WL 125574 (S.D.N.Y. Jan. 11, 2024), and

*Wilton Reassurance Life Co. v. Smith*, No. 12-cv-05131 (SLT) (VMS), 2015 WL 631973 (E.D.N.Y. Feb. 13, 2015).

*StandardAero* concerned a contractual requirement that the defendant "make capital expenditures in all material respects in accordance with the capital expenditures budget set forth on Schedule 6.01(c)(xix)." *StandardAero*, 2024 WL 125574, at *1 (citation omitted).  That cited schedule, however, was merely "a bullet point that sa[id] 'None'"; the next page of the schedule was "titled 'Exhibit 6.01(c)(xix),' and [wa]s followed by a five-page table titled '2021 Capex Budget.'"  *Id.* (citations omitted).  The defendant, moving to dismiss the complaint, argued that the contract's citation to the schedule — rather than to the exhibit — meant the defendant was not required to make any capital expenditures, because the schedule said only "None."  *Id.* at *2. The plaintiff, in turn, argued that the citation rendered the contract ambiguous.  *Id.*  The court agreed with the plaintiff, holding that it would be "consistent with the rest of the [a]greement" to understand the cited schedule as including the attached exhibit.  *Id.* at *3.  The court noted further that the citation to the schedule may have been "a drafting error" and, in support of that theory, pointed to another part of the contract "referencing a nonexistent Schedule 4.15(p) rather than, as likely based on the subject matter, Schedule 4.15(q)."  *Id.* at *4.

In *Wilton*, a life insurance policy's listed beneficiaries included the decedent's daughter, whom the policy identified as Vanessa Smith.  *Wilton*, 2015 WL 631973, at *1.  Another beneficiary moved for summary judgment seeking to be declared the policy's sole beneficiary, on the ground that the decedent did not have a daughter named Vanessa Smith.  *Id.* at *2.  In opposition, the decedent's daughter, actually named Benhester Craig, contended that "she is the 'Vanessa Smith' listed on the original beneficiary form, [and] that her father mispronounced her name causing the insurance agent who filled in the form to misspell her name."  *Id.*  In support of that contention, she "submit[ted] numerous tax returns and other documents in which [the

decedent] referred to 'Benhester' as his daughter." *Id.*  The court found that "whether Benhester ha[d] sufficiently established that she is the 'Vanessa Smith' listed" — and thus "whether the designation of 'Vanessa' was a scrivener's error subject to correction," *id.* at *3 — was a question of material fact precluding summary judgment. *Id.* at *2.  The court noted further that "there was ample evidence in the record supporting" the position that the reference to Vanessa was indeed a scrivener's error. *Id.* at *3.

As in both *StandardAero* and *Wilton*, there is ample evidence here of a scrivener's error that renders the Subcontract, at the very least, ambiguous.  Indeed, the Subcontract itself correctly identifies Exhibit A as the list of additional insureds multiple times.  In Article 4 of the Subcontract, for example, both §§ 4.3.1 and 4.3.5 require that H.A.E. "indemnify and hold harmless" various entities, including "all persons and entities listed as Additional Insureds in Exhibit A hereto[.]"  Dkt. 38-1 at 6-7.  In Article 13, which contains the Subcontract's only reference to Exhibit K, § 13.5 requires that H.A.E. "save and hold harmless . . . the Additional Insureds listed on Exhibit A from and against any and all loss and/or expense[.]"  *Id.* at 18.[1] Article 16 (entitled "Enumeration of Subcontract Documents") also correctly identifies Exhibit A as the "Listing of Additional Insureds for Insurance Coverage."  Dkt. 38-2 at 3.  Exhibit K's reference to Exhibit H — in light of these other references to Exhibit A, and in light of Exhibit K's own clear language suggesting that it intends to cite to a document listing entities rather than one listing values — is ambiguous, but it would be "consistent with the rest of" the Subcontract to read the citation as a scrivener's error. *StandardAero*, 2024 WL 125574, at *3.  On these

---

[1] Travelers argue, based on the parties' Rule 56 statements, that Flintlock has conceded that Article 13 of the Subcontract (entitled "Insurance and Bonds") "makes no mention whatsoever of Exhibit A."  Reply at 3-4; *see* Pl. RSUF ¶ 26 (parties agreeing that Exhibit A "is not mentioned anywhere in Article 13 of the Subcontract").  Notwithstanding Flintlock's concession, the parties are mistaken on this fact based on the plain terms of the Subcontract.

facts, the Court cannot find, as a matter of law, that H.A.E. and Flintlock did *not* intend to include Flintlock as an additional insured through the Subcontract.  *See Wilton*, 2015 WL 631973, at *2-3.

Moreover, and also as in *StandardAero*, there are other plain errors in the Subcontract that support the likelihood that there is a scrivener's error in Exhibit K.  For example, in Article 9 of the Subcontract, § 9.1 lists the "Date of Commencement" as "[t]he date specified in a Notice to Proceed," but next to that line is the following instruction: "[ROSE- SEE IF MANNY HAS A START DATE IN CASE THEY ALREADY STARTED]."  Dkt. 38-1 at 12.  In Article 4, § 4.6.1 refers to "entities identified listed as Additional Insureds in Exhibit B," *id.* at 7 (error in original), even though Exhibit B is a Drawing Manifest that lists no entities.  *See* Dkt. 38-4. Finally, on its first page, the Subcontract identifies Exhibit A not as the additional insureds list, but rather as "[a] copy of the Prime Contract, consisting of the Agreement Between [Danforth] and [Flintlock] . . . and the other Contract Documents enumerated therein."  Dkt. 38-1 at 1.  In fact, however, the Prime Contract is attached to the Subcontract as Exhibit D.  *See* Dkt. 38-6; *see also* Dkt. 38-2 at 3, §§ 16.1.2, 16.1.4 (citing correctly to Exhibit D).  And notably, Exhibit H to the Prime Contract is a list of additional insureds to the Prime Contract, suggesting the same structure was intended for the Subcontract.  *See* Dkt. 38-6 at 119 (requiring that all insurance policies procured for the Prime Contract "include endorsement as Additional Insureds . . . all entities listed on **Exhibit H** and their respective partners, directors, officers, employees, agents and representatives").  Exhibit H to the Prime Contract is nearly identical to Exhibit A to the Subcontract, except that it does not include Flintlock.  *Compare* Dkt. 38-6 at 154, *with* Dkt. 38-3. Moreover, the sentence in Exhibit K to the Subcontract that cites to Subcontract–Exhibit H is written in language nearly identical to the sentence in the Prime Contract that cites to Prime Contract–Exhibit H.  *Compare* Dkt. 38-13 at 2 (Exhibit K requirement that H.A.E.'s policies

9

"include endorsements for the following as Additional Insureds: Owner, Landlord, Lender and all entities listed on **Exhibit H**, as may be updated from time to time, and their respective partners, directors, officers, employees, agents and representatives"), *with* Dkt. 38-6 at 119 (Prime Contract requirement that owner's policies "include endorsement as Additional Insureds: Owner, Landlord, Lender and all entities listed on **Exhibit H** and their respective partners, directors, officers, employees, agents and representatives").  These additional errors and policy structure support the Court's conclusion that Exhibit K is ambiguous and may contain a scrivener's error, and that summary judgment is not appropriate.[2]

Travelers say that reading the Subcontract as containing such an error "ignore[s] the plain language of the Subcontract as well as common sense."  Reply at 2.  But Travelers' preferred reading would mean that H.A.E. agreed to "indemnify and hold harmless . . . all persons and entities listed as Additional Insureds in Exhibit A," Dkt. 38-1 at 7, and simultaneously did *not* agree to obtain insurance policies naming those same persons and entities as additional insureds. The Court does not endorse that reading.  *Cf. Ohio Sec. Ins. Co. v. Utica First Ins. Co.*, 795 F. Supp. 3d 466, 473 (S.D.N.Y. 2025) (rejecting argument that contract's inclusion of a "heading for 'List of Indemnified Parties and Additional Insureds' with no entities listed" meant insured had not agreed to include entity as additional insured, where same contract evinced insured's agreement to obtain insurance to "protect" same entity).

---

[2] In their briefing, Travelers write that Article 13 of the Subcontract contains the citation to Exhibit H.  Reply at 2.  But there is no reference to Exhibit H in Article 13; Article 13 cites to Exhibit K, and Exhibit K, in turn, cites to Exhibit H.  *See* Dkt. 38-1 at 18; Dkt. 38-13 at 2.  The Court presumes that Travelers' reference to "Article 13" here, instead of "Exhibit K," is a scrivener's error.  *See RL 900 Park, LLC v. Ender*, No. 18-cv-12121 (MKV), 2021 WL 738705, at *9 n.5 (S.D.N.Y. Feb. 25, 2021) (noting scrivener's error in party's submitted declaration's reference to "Exhibit C" where it was "obvious . . . [the party] intended to cite Exhibit E").

10

As a result of this apparent scrivener's error, Flintlock suggests the Subcontract should be reformed. Opp. at 7-8. Travelers argue that Flintlock is not entitled to reformation of the Subcontract to change the reference from Exhibit H to Exhibit A, because Flintlock did not seek that relief in its pleadings. *See* Reply at 4 n.3. The Court is not convinced by Travelers' contention. *See StandardAero*, 2024 WL 125574, at *4 n.6 (collecting cases, and noting that "courts make such a finding [of scrivener's error], often on behalf of defendants, without requiring specific pleading" of reformation). However, Flintlock did not seek summary judgment, and the Court will not reform the contract on Travelers' summary judgment motion. Rather, the motion presently before the Court is to determine whether the Subcontract's language is sufficient to demonstrate, as a matter of law, that H.A.E. and Flintlock did *not* agree to make Flintlock an additional insured under the Primary Policies. Based on the foregoing — and having reviewed the undisputed facts, and the Subcontract in its entirety, in the light most favorable to Flintlock — the Court finds that it cannot grant Travelers judgment as a matter of law on that question, given that there is a question of material fact over whether Exhibit K includes a typographical error in its requirement that H.A.E. obtain insurance and include as additional insureds "all entities listed on **Exhibit H**." Dkt. 38-13 at 2. Therefore, on the basis of the Subcontract's reference to Exhibit H, the Court cannot find as a matter of law that Flintlock is not an additional insured under the Primary Policies — and, through them, the Excess Policies, *see* Br. at 12 & n.3 (conceding that "the Excess Policies afford follow-form liability coverage" based on the Primary Policies) — and cannot grant Travelers' motion for summary judgment.

### B.    The Meaning of Exhibit A

Next, Travelers argue that even if Exhibit K were understood as citing to Exhibit A, Flintlock's claim would still fail because "Exhibit A required only that Flintlock be included as a 'Certificate Holder,'" and Flintlock's status as certificate holder does not make it an additional

insured.  Reply at 3; *see* Br. at 10-11.  Flintlock contends that the certificates of insurance create a fact issue "as to the existence of coverage."  Opp. at 12; *see also id.* at 11-12.  Although the Court agrees with Travelers regarding a certificate holder's legal status, the Court finds that a fact issue exists over whether Flintlock was required to be included only as a certificate holder.

To be sure, a certificate holder is not, as a result of that status alone, an additional insured under the policy to which the certificate refers.  Indeed, in New York, "as a general matter, 'a certificate of insurance is merely evidence of a contract for insurance, not conclusive proof that the contract exists, and not, in and of itself, a contract to insure.'"  *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Corp.*, 634 F.3d 112, 122 (2d Cir. 2011) (alteration adopted) (quoting *Horn Maint. Corp. v. Aetna Cas. & Sur. Co.*, 639 N.Y.S.2d 355, 356 (N.Y. App. Div. 1996)).  Where, as here, a certificate of insurance states that it is "issued as a matter of information only[,] confers no rights upon the certificate holder," and "does not amend, extend or alter the coverage afforded by the policies," then it is "insufficient, by itself, to show that such insurance has been purchased."  *Home Depot U.S.A., Inc. v. Farm Family Cas. Ins. Co.*, No. 13-cv-00099 (JS) (AKT), 2016 WL 614678, at *6 (E.D.N.Y. Feb. 11, 2016) (first quoting *Moleon v. Kreisler Borg Florman Gen. Constr. Co.*, 758 N.Y.S.2d 621, 623 (N.Y. App. Div. 2003); and then quoting *Trapani v. 10 Arial Way Assocs.*, 755 N.Y.S.2d 396, 399 (N.Y. App. Div. 2003)).  *See also Travelers Indem. Co. of Conn. v. Colony Ins. Co.*, No. 23-cv-06168 (LJL), 2025 WL 307222, at *8 (S.D.N.Y. Jan. 27, 2025) (finding that, even though certificate of insurance expressly named party as additional insured, "it is the policy itself rather than a certificate that governs whether a person is an additional insured").  Accordingly, the Court is not persuaded that Flintlock's certificates of insurance raise an issue of material fact on the question of whether Flintlock is an additional insured under the Primary Policies and Excess Policies.

12

But the Court parts ways with Travelers at their argument that "Exhibit A required only that Flintlock be included as a 'Certificate Holder.'" Reply at 3. That formulation is imprecise. Exhibit A, a list of entities, does not require anything: Exhibit K contains the requirements, and Exhibit K requires that H.A.E. obtain insurance policies that "include endorsements . . . as Additional Insureds" for "all entities listed on Exhibit [A]." Dkt. 38-13 at 2. The requirement is not confined to entities listed *as additional insureds* on Exhibit A, but rather *all entities* listed on Exhibit A. Flintlock is plainly an entity listed on Exhibit A. *See* Dkt. 38-3 at 2. *Cf. Zurich Am. Ins. Co. v. Endurance Am. Specialty Ins. Co.*, 43 N.Y.S.3d 40, 41-42 (N.Y. App. Div. 2016) (rejecting argument that entities were not additional insureds because policyholder did not sign contract agreeing to so list them, where policy "merely require[d] a 'written' contract" evincing agreement, "not a 'signed' one"). Therefore, assuming Exhibit K's citation to Exhibit H is actually a citation to Exhibit A, the Court cannot conclude, as a matter of law, that the Subcontract does not demonstrate an agreement between H.A.E. and Flintlock to include the latter as an additional insured under the Primary Policies (and, thus, the Excess Policies).[3]

## C.    Exhaustion of the Primary Policies

Finally, Travelers argue that Flintlock's "claims for coverage under the Excess Policies must be dismissed" as "premature," because TICC denied coverage to Flintlock under the Primary Policies, and therefore Flintlock has not yet exhausted the limits of the Primary Policies. Br. at 7-8; Reply at 7-8. Flintlock counters that the damages claimed in the underlying state court action are well in excess of the Primary Policies' limits, and therefore it would be

---

[3] The parties also disagree over whether Travelers can be equitably estopped from denying coverage to Flintlock due to the certificates of insurance. *See* Br. at 11-12; Opp. at 12-13; Reply at 5-7. Because Flintlock has not raised estoppel, *see* Br. at 11, and the Court's analysis does not turn on the existence or legal effect of the certificates of insurance, the Court need not reach this question.

premature to grant summary judgment to Travelers on this claim.  Opp. at 13-14.  The Court agrees that summary judgment is premature.

"An excess insurance policy . . . is not triggered unless the coverage limits of lower-level policies have first been exhausted."  *Olin Corp. v. Am. Home Assu. Co.*, 704 F.3d 89, 104 (2d Cir. 2012); *accord Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 407 (S.D.N.Y. 2021).  Accordingly, "an excess insurance carrier may elect to participate in an insured's defense to protect its interest, [but] it has no obligation to do so."  *Fieldston Prop. Owners Ass'n v. Hermitage Ins. Co.*, 945 N.E.2d 1013, 1018 (N.Y. 2011) (internal quotation marks and citation omitted).  The Second Circuit has explained that whether a primary policy has been exhausted depends on the language of the policy: under some, the insurer must actually pay out a claim over the primary policy's limit to trigger the excess policy; under others, it is sufficient that the insured's accrued losses exceed the primary policy limit, even though (for example) the insurer settles the claim for an amount below that limit.  *See Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*, 49 F.4th 105, 113-15 (2d Cir. 2022).

Here, the Excess Policies do not require exhaustion by payout of the Primary Policies to trigger coverage, but they do require that the insured (*i.e.*, H.A.E. and/or Flintlock) be "legally obligated" to pay for damages that exceed the Primary Policies' limits.  Pl. RSUF ¶ 16.  Neither Flintlock nor H.A.E. have been so obligated.  Indeed, in arguing that the Primary Policies have been exhausted, Flintlock points only to its anticipation that its claim *will* exceed their limits if Danforth prevails against it in the state court action.  *See* Opp. at 14 (noting that "[t]he damages claimed in the underlying action are '$7,550,689,' which are clearly in excess of the underlying coverage limits" (citation omitted)).  That is not enough.  *See Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 839 N.Y.S.2d 91, 93 (N.Y. App. Div. 2007) ("When insurers agree to pay all sums which an insured becomes 'legally obligated to pay as damages,' there must be 'an establishment

of legal liability for payment of damages' to trigger the insurers' duty to indemnify the insured." (quoting *M & M Elec. v. Comm. Union Ins. Co.*, 670 N.Y.S.2d 909, 911 (N.Y. App. Div. 1998))); *see also In re Residential Cap., LLC*, No. 12-12020 (MG), 2022 WL 17836560, at *31-32 (Bankr. S.D.N.Y. Dec. 21, 2022) (finding no exhaustion where primary policies required insurer first be held "liable to pay," which "connotes a determination of a court or other authorized tribunal[, and] [u]ntil and unless such a holding exists, the coverage obligations under the [e]xcess . . . [p]olicy are not triggered"), *report and recommendation adopted in part and rejected on other grounds sub nom. Drennen v. Certain Underwriters at Lloyd's of London*, No. 23-cv-03385 (JPO), 2024 WL 4476067 (S.D.N.Y. Oct. 11, 2024); *cf. Preferred Constr., Inc. v. Ill. Nat'l Ins. Co.*, 494 F. App'x 162, 165 (2d Cir. 2012) (summary order) (affirming grant of summary judgment where it was undisputed that primary policy had not yet been exhausted, even though complaint sought "only damages above the 'applicable limits' of the underlying coverage").

Therefore, even assuming Flintlock is an additional insured under the Primary Policies (and, therefore, necessarily the Excess Policies), Flintlock has not exhausted the Primary Policies' coverage, and it is not *currently* entitled to coverage under the Excess Policies. However, just as the Court cannot find, as a matter of law, that Flintlock is *not* an additional insured under these Policies, the Court cannot rule as a matter of law that Flintlock is not *ever* entitled to coverage under the Excess Policies. Indeed, the parties agree (albeit for slightly different reasons) that a determination of the Excess Policies' coverage is premature. Accordingly, Travelers' motion for summary judgment on Flintlock's claim that TIC is jointly and severally liable to Flintlock under the Excess Policies is denied at this juncture, and the Court will revisit that issue at or before trial.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Travelers' motion for summary judgment. Trial in this matter shall commence on **June 9, 2026**. The parties' joint pretrial order and other pretrial submissions required under the Court's Individual Rules are due by **April 15, 2026**. The final pretrial conference will be held on **June 1, 2026, at 10:00 am** in Courtroom 20B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

The Clerk of Court is respectfully requested to terminate the motion at Dkt. 36.

Dated:  March 2, 2026
        New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

16